UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARENCE V. KNIGHT,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>MARION E. SPEARMAN,<br><br>　　　　　Respondent. | No.  2:19-cv-1633 KJM KJN P<br><br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

I. Introduction

　　　　Petitioner is a state prisoner, proceeding without counsel.  On November 3, 2020, the district court remanded the case for the undersigned to consider whether this case should be stayed to allow petitioner to exhaust claim three, or whether claim three should be denied on the merits.  Accordingly, the undersigned vacates the findings and recommendations and addresses respondent's motion to dismiss anew.

　　　　Respondent moves to dismiss the petition on several grounds:  (1) claim three is unexhausted; (2) petitioner's first and second claims alleging he is entitled to a youth offender parole hearing do not establish a basis for federal habeas relief; (3) such claims are barred by the one-year statute of limitations; and (4) the instant petition is moot because on October 9, 2019, petitioner waived the right to have his parole hearing.  Petitioner filed an opposition, and respondent filed a reply.

As set forth below, the undersigned recommends that the motion to dismiss be granted.

II. Legal Standards

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court. . . ." Id.  The Court of Appeals for the Ninth Circuit has referred to a respondent's motion to dismiss as a request for the court to dismiss under Rule 4 of the Rules Governing § 2254 Cases.  See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (1991).  Accordingly, the court reviews respondent's motion to dismiss pursuant to its authority under Rule 4.

III. Background

Petitioner was convicted in 1979 in the San Diego County Superior Court for first degree murder and robbery, with a gun enhancement. (ECF No. 1 at 54.)  Petitioner was sentenced to 25 years-to-life plus a twelve-year aggregate term, to be served first. (ECF No. 1 at 5.)  Petitioner committed such offenses when he was 18 years old. (ECF No. 1 at 5.)

In his state court habeas petition filed in the California Supreme Court on March 28, 2019, petitioner alleged that he was deprived of a youth offender parole hearing under California Senate Bill 261[1] and California Penal Code §§ 3051 and 4801(c) in violation of his due process and equal protection rights under both the California and U.S. Constitutions.[2]  (ECF No. 13 at 47.)  The petition was denied without comment on July 10, 2019.  Knight (Clarence Vinson) on H.C., No. S254975 (Cal.).[3]

---

[1] Taken together, California Senate Bill 260, effective at the start of 2015, and California Senate Bill 261, effective at the start of 2016, created and expanded a special parole process for persons who committed their crimes when they were younger than 18 or who were 18 to 22 at the time of their crimes and who already have served specified terms of 15, 20, or 25 years.  Such persons will receive Youth Offender Parole Hearings to be considered for release on parole.

[2] On January 1, 2016, both sections 3051 and 4081 were amended to apply to prisoners who committed their controlling offense when they were under 23 years of age. (ECF No. 13 at 68.)  Subsequently, the applicable age was raised to 25 years or younger. (ECF No. 13 at 68 n.1.)

[3] The court may take judicial notice of facts that are "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b), including undisputed information posted on

IV. Petitioner's Claims

In the instant petition, petitioner raises three claims: (1) petitioner was deprived of a youth offender parole hearing he was entitled to under California Senate Bill 261; (2) the failure to provide petitioner with a timely youth offender parole hearing violated petitioner's due process rights; and (3) petitioner's term of imprisonment expired when his California Penal Code § 2931 credits elapsed on March 16, 2011, yet the Board did not conduct petitioner's parole hearing until January 9, 2015, violating his due process rights under the Fifth and Fourteenth Amendments. (ECF No. 1 at 5, 11-14, 15-18.)

V. The Third Claim is Unexhausted

In his third claim, petitioner alleges that his "term of imprisonment expired when his Penal Code § 2931 credits elapsed on March 16, 2011. (See Attachment #1.)" (ECF No. 1 at 17, 53-54.) "The Board failed to uphold [petitioner's] rights by conducting the January 9, 2015 Board hearing beyond the expiration of [petitioner's] term of imprisonment of 25 years-to-life." (ECF No. 1 at 16.) As a result, petitioner claims his substantive due process rights under the Fifth and Fourteen Amendments were violated, and he should be released. (ECF No. 1 at 15-16.) Petitioner also discusses the failure of the Board to provide him with a timely youth offender hearing, but the gravamen of petitioner's third claim is that he is entitled to federal habeas relief because the Board violated his constitutional rights to due process by failing to release him at the expiration of his prison term, as reduced by credit earned under California Penal Code § 2931.[4]

////

---

official websites. Daniels-Hall v. National Education Association, 629 F.3d 992, 999 (9th Cir. 2010). It is appropriate to take judicial notice of the docket sheet of a California court. White v. Martel, 601 F.3d 882, 885 (9th Cir. 2010). The address of the official website of the California state courts is www.courts.ca.gov.

[4] Section 2931 governs the reduction of state prison terms for good behavior and participation, and states, in pertinent part: "(a) In any case in which a prisoner was sentenced to the state prison pursuant to [California Penal Code] Section 1170 [governing the imposition of determinate sentences], or if he committed a felony before July 1, 1977, and he would have been sentenced under [California Penal Code] Section 1170 if the felony had been committed after July 1, 1977, the Department of Corrections shall have the authority to reduce the term prescribed under such section by one-third for good behavior and participation consistent with [California Penal Code Section 1170.2(d) ]. . . ." Cal. Penal Code § 2931(a).

The exhaustion of state court remedies is a prerequisite to the granting of a petition for writ of habeas corpus. 28 U.S.C. § 2254(b)(1). If exhaustion is to be waived, it must be waived explicitly by respondent's counsel. 28 U.S.C. § 2254(b)(3).[5] Thus, a waiver of exhaustion may not be implied or inferred. A petitioner satisfies the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider all claims before presenting them to the federal court. Picard v. Connor, 404 U.S. 270, 276 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir. 1985), cert. denied, 478 U.S. 1021 (1986).

The state court has had an opportunity to rule on the merits when the petitioner has fairly presented the claim to that court. The fair presentation requirement is met where the petitioner has described the operative facts and legal theory on which his claim is based. Picard, 404 U.S. at 277-78. Generally, it is "not enough that all the facts necessary to support the federal claim were before the state courts . . . or that a somewhat similar state-law claim was made." Anderson v. Harless, 459 U.S. 4, 6 (1982). Instead,

> [i]f state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

Duncan v. Henry, 513 U.S. 364, 365 (1995). Accordingly, "a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief." Gray v. Netherland, 518 U.S. 152, 162-63 (1996).

As argued by respondent, petitioner did not raise this claim in his California Supreme Court petition. Although petitioner argues that his third claim "derives from" his first and second claims, petitioner did not fairly present his substantive due process claim to the California Supreme Court as he did not include either the underlying facts or the specific federal constitutional guarantee underlying his third claim. Thus, the court finds that petitioner has failed to exhaust state court remedies as to petitioner's third claim. On November 30, 2020, the district

---

[5] A petition may be denied on the merits without exhaustion of state court remedies. 28 U.S.C. § 2254(b)(2).

4

court agreed that petitioner did not exhaust his third claim in state court before filing his federal habeas petition. (ECF No. 18 at 1.)

VI. Should Petitioner be Granted a Stay and Abeyance?

In his objections, petitioner argues that this court should stay and hold this action in abeyance to allow petitioner to return to state court to exhaust claim three. (ECF No. 17 at 2.) Respondent contends that the court should dismiss claim three on its merits. (ECF No. 13 at 3, 4-5.) Respondent notes that claim three would also be barred by the statute of limitations. (ECF No. 13 at 5 n.4.)

    A. Mixed Petitions

The inclusion of an unexhausted claim in an otherwise exhausted habeas petition renders it mixed and subjects the action to dismissal without prejudice. See Rose v. Lundy, 455 U.S. 509, 522 (1982) ("In sum, because a total exhaustion rule promotes comity and does not unreasonably impair the prisoner's right to relief, we hold that a district court must dismiss habeas petitions containing both unexhausted and exhausted claims.").

Federal law recognizes two different procedures that a prisoner may use to stay a federal habeas action. See Rhines v. Weber, 544 U.S. 269 (2005) (staying timely mixed petition); Kelly v. Small, 315 F.3d 1063 (9th Cir. 2003) (allowing prisoner to dismiss unexhausted claims and stay action as to exhausted claims subject to potential later amendment of petition).

Under Rhines, a district court may stay, in limited circumstances, a mixed petition pending exhaustion of unexhausted claims if: (1) the petitioner had good cause for his failure to exhaust; (2) his unexhausted claims are potentially meritorious; and (3) there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. Rhines, 544 U.S. at 278. Each of these three conditions must be satisfied because, as the court emphasized, "even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." Rhines, 544 U.S. at 277.

Alternatively, the court may grant a stay under Kelly, which does not require petitioner to demonstrate good cause for the stay. King v. Ryan, 564 F.3d 1133, 1135 (9th Cir. 2009). "Pursuant to the Kelly procedure, (1) a petitioner amends his petition to delete any unexhausted

claims; (2) the court stays and holds in abeyance the amended, fully exhausted petition, allowing the petitioner the opportunity to proceed to state court to exhaust the deleted claims; and (3) the petitioner later amends his petition and re-attaches the newly-exhausted claims to the original petition." King, 564 F.3d at 1133, 1135 (9th Cir. 2009), citing Kelly, 315 F.3d at 1070-71. But petitioner is allowed to amend newly-exhausted claims back into his federal petition only if the statute of limitations has not yet expired, or the claims "relate back" to the timely exhausted claims in the federal petition. King, 564 F.3d at 1140-41. Finally, a Kelly stay "will be denied when the court finds such a stay would be futile." Knowles v. Muniz, 228 F. Supp. 3d 1009, 1016 (C.D. Cal. 2017) (citation omitted), certificate of appealability denied, 2017 WL 44117879 (9th Cir. Sept. 7, 2017). Where petitioner seeks to exhaust a claim that is meritless, it would be futile to grant a Kelly stay. Knowles, 228 F. Supp. 3d at 1016. "Indeed, the purpose of the Kelly stay procedure is to allow for a stay "'when valid claims would otherwise be forfeited.'" Knowles, 228 F. Supp. 3d at 1016, citing Kelly, 315 F.3d at 1070.

### B. Discussion

Exhaustion of a meritless claim would be futile; therefore, stays under either Rhines or Kelly require a finding that the unexhausted claim is not "meritless." Rhines, 544 U.S. at 277, citing 28 U.S.C. § 2254(b)(2); Knowles, 228 F. Supp. 3d at 1016. Further, the Ninth Circuit has held that an unexhausted claim may be denied "on the merits when it is perfectly clear that the applicant does not raise even a colorable federal claim." Cassett v. Stewart, 406 F.3d 614, 623 (9th Cir. 2005); see also 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). As discussed below, the undersigned finds that petitioner's third claim plainly does not entitle petitioner to federal habeas relief. Therefore, petitioner's motion for stay should be denied, and his third claim should be denied on the merits.

#### 1. Was Petitioner Entitled to Release on March 16, 2011?

"There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979). Here, petitioner's third claim appears to

1  misunderstand the California parole system. Relying on California Penal Code § 2931, petitioner
2  argues that because of sentencing credits, his indeterminate sentence was somehow transformed
3  into a determinate sentence. (ECF No. 1 at 16.) According to petitioner, his maximum term
4  sentence expired on March 16, 2011, and he should have been released by that date. (ECF No. 1
5  at 16-17.)

6  Petitioner is mistaken for two reasons. First, petitioner relies on a document entitled,
7  "Legal Status Summary," calculating petitioner's maximum eligible parole date ("MEPD") as
8  March 16, 2011 (entered as "MEPD Override"). (ECF No. 1 at 54.) However, it is California
9  law, not this cited summary, that governs the length of petitioner's sentence. Petitioner does not
10 demonstrate that California law requires that he be paroled by a date certain. See Cal. Penal Code
11 § 3041(b) (governing parole determinations in cases involving indeterminate sentences); Chavez
12 v. Curry, 2010 WL 4340068, at *6 (N.D. Cal. Oct. 25, 2010) ("California law, not the CDCR, sets
13 the proper length of an inmate's incarceration."). Petitioner has not cited, and this court is not
14 aware of, any United States Supreme Court authority providing that a state prisoner serving an
15 indeterminate life sentence with the possibility of parole has a constitutional right to be released
16 by a date calculated by prison authorities as a maximum eligible parole date where state law
17 provides otherwise. See Gray v. Hartley, 2010 WL 3619453, at *3 (E.D. Cal. Sept.13, 2010)
18 ("There is no clearly established federal law holding that a state prisoner serving a life sentence,
19 with the possibility of parole, has a constitutional right to be released by his maximum parole
20 eligibility date.).

21 Second, California Penal Code § 2931 only applies to determinate sentences imposed
22 pursuant to California Penal Code § 1170. Cal. Penal Code § 2931(a). Section 1170 does not
23 apply to petitioner "because a sentence for first degree murder was an indeterminate term both
24 before and after the enactment of the [Determinate Sentencing Law]." Lateef v. Horel, 2009 WL
25 4251325, at *3 (N.D. Cal. Nov. 23, 2009) (citation omitted). As the California Supreme Court
26 explained in People v. Felix, 22 Cal.4th 651, 654, 94 Cal.Rptr.2d 54 (2000), in California, "two
27 different sentencing schemes coexist today: one determinate, the other indeterminate," and "a
28 straight life sentence, as well as a sentence of some number of years to life, is *not* a determinate

sentence within the meaning of the [Determinate Sentencing Act]." Felix, 22 Cal. 4th at 654, 659. Indeed, petitioner was previously so informed -- in a prior habeas action challenging the 2015 parole hearing, the district court noted that the California Court of Appeal found petitioner's reliance on the Determinate Sentencing Law "was misplaced because he received an *indeterminate* sentence that does not have a fixed term or duration." Knight v. Diaz, 2020 WL 475221, at *3 (S.D. Cal. Jan. 29, 2020),[6] adopted, 2020 WL 1508377 (S.D. Cal. Mar. 30, 2020).

Here, petitioner was sentenced to an indeterminate term of 25 years-to-life for committing first degree murder in violation of California Penal Code § 187(a). Because petitioner is serving an indeterminate life sentence, he is not entitled to be considered for release as though sentenced under California Penal Code § 1170. Rather, under California law, petitioner's maximum sentence for his first degree murder conviction is life in prison. See Cal. Penal Code §§ 187, 190(a); People v. Wingo, 14 Cal.3d 169, 182, 121 Cal.Rptr. 97 (1975) (an "indeterminate sentence is in legal effect a sentence for the maximum term, subject only to the ameliorative power of the [parole authority] to set a lesser term."), (citations omitted).) Accordingly, when a prisoner is serving an indeterminate sentence in California, the Board is empowered to determine if petitioner is suitable for parole. Cal. Penal Code § 3040(b). Thus, an individual serving an indeterminate life sentence, like petitioner, is under the jurisdiction of the Board and will not be released from confinement until first found suitable for parole, no matter how long the prisoner has been confined. Cal. Penal Code § 3041(b); Cal. Code Regs., tit. 15, § 2410)). If the Board determines that a prisoner is suitable for parole, the Board will then set a release date taking into consideration sentence credits. Cal. Code Regs., tit. 15, § 2410(a); see In re Dannenberg, 34 Cal.4th 1061, 1071, 1079-80, 23 Cal.Rptr.3d 417 (2005) ("The regulations governing murderers serving indeterminate life sentences have long provided that determination of an individual inmate's suitability for parole under section 3041, subdivision (b) must precede any effort to set a parole release date under the uniform-term principles of section 3041, subdivision (a)."), cert. denied, 546 U.S. 844 109 (2005); see also Cal. Penal Code § 3041(b) ("The [Board] shall set a

---

[6] In his prior habeas case, petitioner argued, *inter alia*, that he was "entitled to release at the conclusion of his 29-year base term." Id. at *4.

release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting."). To date, petitioner has not been found suitable for parole. Thus, petitioner's "ongoing detention does not deprive him of due process." Jimenez v. Hartley, 2010 WL 5598521, at *6 (C.D. Cal. Dec. 6, 2010), adopted, 2011 WL 164536 (C.D. Cal. Jan. 13, 2011).

### 2. Delay in Holding January 9, 2015 Parole Hearing

As discussed above, petitioner was not entitled to release on March 16, 2011, and his release date will not be calculated until after the Board finds petitioner suitable for parole. Because petitioner's term of imprisonment did not expire on March 16, 2011, the Board was not required to hold a hearing prior to such date.

### C. Conclusion

Accordingly, it is clear that petitioner's third claim does not entitle petitioner to federal habeas relief. Therefore, under either Rhines or Kelly, petitioner's request to stay and hold this case in abeyance to allow him the opportunity to exhaust his third claim should be denied, and his third claim should be denied on the merits.

## VII. Is Habeas Jurisdiction Lacking?

### A. Background - Juvenile Sentencing

California is prohibited from imposing or enforcing mandatory sentences of life without the possibility of parole to juveniles. See Miller v. Alabama, 567 U.S. 460 (2012) (prohibiting mandatory sentences of life without the possibility of parole for offenders under the age of 18) and Montgomery v. Louisiana, 136 S. Ct. 718 (2016) (making the prohibition of mandatory sentences of life without the possibility of parole for juveniles retroactive to sentences imposed before Miller).

### B. California's Response

In 2013, the California Legislature passed Senate Bill 260 in response to Miller, 567 U.S. at 479. In Miller, the Supreme Court held unconstitutional a mandatory sentence of life without

9

1   the possibility of parole for a homicide committed when the defendant was fourteen years old. Id.
2   Senate Bill 260 enacted, inter alia, California Penal Code § 3051. Section 3051 provides that any
3   individual serving a sentence imposed for a crime committed when the individual was under the
4   age of eighteen may obtain a juvenile offender parole hearing. Senate Bill 260 also amended
5   California Penal Code § 4801. Section 4801 now provides that, in considering the parole
6   eligibility of such an individual, the Board of Parole Hearings should "give great weight to the
7   diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any
8   subsequent growth and increased maturity of the prisoner in accordance with relevant case law."
9   See Cal. Penal Code § 4801(c) (eff. Jan. 1, 2014 to Dec. 31, 2015). In 2015, the California
10  Legislature enacted Senate Bill 261, which extended the juvenile offender provisions of § 4801(c)
11  to individuals such as petitioner who were under the age of twenty-three at the time of the
12  commitment offense. See Cal. Stats. 2015, c. 471 (S.B. 261, § 2, eff. Jan. 1, 2016).[7]

C.  Discussion

Here, petitioner is not serving a sentence of life without parole, and was not under age 18 when he committed his offense; rather, he was 18 years old. (ECF No. 1 at 5.) Thus, his sentence does not violate either Miller or Montgomery. Rather, petitioner contends that he was deprived of a youth offender parole hearing under California Senate Bill 261, enacted in 2015. But, as argued by respondent, petitioner has not demonstrated how having a juvenile offender parole hearing would guarantee petitioner's immediate or speedier release, as the youth factors are just one of numerous factors the Board considers in determining suitability for release. Consideration under California Senate Bill 261 would make petitioner eligible for parole, and entitle him to a parole hearing. See Cal. Penal Code § 3051. But such process would not necessarily secure petitioner an earlier release. Because any relief would not necessarily result in petitioner's immediate or accelerated release from prison, any alleged claim regarding his entitlement to have a juvenile offender hearing or create a record of his youth factors is not cognizable on federal habeas. See

---

[7] In 2017, the California Legislature amended California Penal Code § 4801(c) to extend the same provisions to individuals who were as old as twenty-five at the time of the commitment offense. See Cal. Stats. 2017, c. 675 (A.B. 1308, § 2, eff. Jan. 1, 2018).

1 Nettles v. Grounds, 830 F.3d 922, 935 (9th Cir. 2016) (*en banc*) (holding Nettles' claim was non-
2 cognizable because success "would not necessarily lead to [petitioner's] immediate or earlier
3 release from confinement") (quoting Skinner v. Switzer, 562 U.S. 521, 535 n.13 (2011)).[8]

Moreover, petitioner's claim that he was denied a youth offender hearing under Senate Bill 261 is solely based on an alleged violation of state law, for which federal habeas relief is unavailable. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (federal habeas relief unavailable for alleged state law violations); Young v. Pfeiffer, 2017 WL 8021753, at *4 n.6 (C.D. Cal. Dec. 29, 2017), adopted, 2018 WL 1135452 (C.D. Cal. Feb. 26, 2018) (claim that Board failed to afford petitioner a youth offender parole hearing raises only an alleged violation of state law, not cognizable on federal habeas review); see also Wilson v. Corcoran, 562 U.S. 1, 5 (2010) (per curiam) ("it is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts"); Hendricks v. Vasquez, 974 F.2d 1099, 1105 (9th Cir. 1992) ("Federal habeas will not lie for errors of state law").

In his opposition, petitioner contends that he has a liberty interest in parole. (ECF No. 14 at 4-5.) However, in 2011, the United States Supreme Court overruled a line of Ninth Circuit precedent that had supported habeas review in California cases involving denials of parole by the Board or the governor. See Swarthout v. Cooke, 562 U.S. 216, 220-21 (2011). The Supreme Court held that federal habeas jurisdiction does not extend to review of the evidentiary basis for state parole decisions. Because the Due Process Clause does not require correct application of California's "some evidence" standard for denial of parole, federal courts may not intervene in parole decisions as long as minimum procedural protections are provided. Swarthout, 562 U.S. at

---

[8] District courts have discretion to convert a habeas corpus petition into a civil rights complaint. See Nettles, 830 F.3d at 935-36. However, in this case, the court should decline to do so. "[A] habeas corpus action and a prisoner civil rights suit differ in a variety of respects -- such as . . . filing fees, the means of collecting them, and restrictions on future filings -- that may make recharacterization impossible or, if possible, disadvantageous to the prisoner compared to a dismissal without prejudice of his petition for habeas corpus." Nettles, 830 F.3d at 935-36 (citations and internal quotations omitted). For these reasons, conversion of the petition into a civil rights complaint is not appropriate here. See Carroll v. Asuncion, 2018 WL 2208034, at *2-3 (C.D. Cal. Mar. 23 2018), (declining to convert habeas petition into civil rights complaint in light of considerable procedural and substantive difference between the two), adopted, 2018 WL 2213450 (C.D Cal. May 14, 2018).

11

220-21. The inquiry is limited to whether the prisoner was given the opportunity to be heard and received a statement of reasons why parole was denied. Id. at 221; Greenholtz, 442 U.S. at 16.

Accordingly, this court lacks jurisdiction over petitioner's first and second claims, as well as any portion of petitioner's third claim in which he attempted to challenge the failure to provide petitioner with a timely juvenile offender hearing.[9]

VIII.  Statute of Limitations

The undersigned also finds that petitioner has not demonstrated the instant petition was timely filed.

Pursuant to 28 U.S.C. § 2244(d)(1), a one-year statute of limitations exists for the filing of habeas petitions by persons in state custody. Id.  The limitation period runs from the latest of: (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2241(d)(1).

Here, petitioner does not argue that any of these later trigger dates apply.[10] Rather, he contends that "the clock is supposed to begin running when the first court issues an order regarding that matter at hand," but then states that the limitations period begins "after the highest

---

[9] Because this court lacks jurisdiction over such claims, the court declines to address respondent's mootness argument. (ECF No. 13 at 5-6.)

[10] Petitioner does not challenge his 1979 conviction. Because his conviction would have become final decades ago, any such challenge would be time-barred under 28 U.S.C. § 2244(d)(1)(A). In addition, the facts of this case do not support a later trigger date under § 2244(d)(1)(B). "The limited case law applying § 2244(d)(1)(B) has dealt almost entirely with the conduct of state prison officials who interfere with inmates' ability to prepare and to file habeas petitions by denying access to legal materials." Shannon v. Newland, 410 F.3d 1083, 1087 (9th Cir. 2005), citing see, e.g., Whalem/Hunt v. Early, 233 F.3d 1146 (9th Cir. 2000) (*en banc*).

1  state court rules and exhausts all state court remedies." (ECF No. 14 at 9, 10.) Petitioner cites no
2  legal authorities for such views. Respondent suggests using the date of the enactment of Senate
3  Bill 261, a California state statute, as the trigger date. (ECF No. 13 at 5.)

4  Section 2244(d)(1)(C) provides for the limitations period to run from the announcement of
5  a new and retroactive legal right, but is limited by its terms to new federal rights announced by
6  the United States Supreme Court. The Supreme Court has not recognized a federal due process
7  right, or any other federal right, to consideration for a youth offender parole hearing under Senate
8  Bill 261. "[A] state statute is not an announcement by the Supreme Court recognizing a new
9  federal constitutional right, and thus will not trigger the running of the AEDPA statute of
10 limitations under section 2244(d)(1)(C)." Young, 2017 WL 8021753, at *4.

11 The governing statute also provides for the limitations period to run from the "date on
12 which the factual predicate of the claim or claims presented could have been discovered through
13 the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Petitioner does not identify an
14 administrative decision that would give rise to a later trigger date under 28 U.S.C.
15 § 2244(d)(1)(D). Shelby v. Bartlett, 391 F.3d 1061, 1066 (9th Cir. 2004). Moreover, the term
16 "factual predicate" in § 2244(d)(1)(D) does not encompass changes in state law. See Shannon v.
17 Newland, 410 F.3d 1083, 1089 (9th Cir. 2005) ("If a change in (or clarification of) state law, by a
18 state court, in a case in which Shannon was not a party, could qualify as a "factual predicate,"
19 then the term "factual" would be meaningless."). California Senate Bill 261 changed the law, not
20 the facts pertaining to petitioner's conviction or sentence.

21 Accordingly, the federal statute of limitations does not provide for delayed
22 commencement of the limitations period in this case.

23 IX. Order and Recommendations

24 Accordingly, IT IS HEREBY ORDERED that the findings and recommendations (ECF
25 No. 16) are vacated.

26 Further, IT IS RECOMMENDED that:

27 1. Petitioner's motion for stay and abeyance (ECF No. 17) be denied;

28 2. Respondent's motion to dismiss (ECF No. 13) be granted; and

1    3.  This action be dismissed.

2    These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 9, 2021

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

knig1633.mtd.hc2